UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mark Frost and Jayson Gardner

     v.                          Civil No. 09-cv-339-JL
                                     Opinion No. 2010 DNH 072

Town of Hampton et al.

**MEMORANDUM ORDER**

The parties recently settled this civil rights case
challenging the constitutionality of a provision in New
Hampshire's disorderly conduct statute, see N.H. Rev. Stat. §
644:2(III)(a) (prohibiting "loud or unreasonable noises in a
public place"), both on its face and as applied to two street
preachers who were arrested for allegedly preaching too loudly
near the Hampton Beach boardwalk.  As part of the settlement, the
Town of Hampton agreed to reimburse the plaintiffs for their
reasonable attorneys' fees and costs, to be determined by this
court under the Fees Act, 42 U.S.C. § 1988(b).  This court has
subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal
question) and 1343 (civil rights).

The plaintiffs have moved for an award of $61,748.50 in
attorneys' fees and $852.10 in costs.  The town, not objecting to
the amount of costs, proposes a smaller fee award of $14,368.54.
After hearing oral argument, this court grants the motion in part
and awards the plaintiffs $34,005.00 in fees, plus their costs.

Most of the hours that plaintiffs' counsel spent on this case were reasonable and productive.  But some reduction is necessary because the plaintiff's multiple-attorney staffing of this case, which involved straightforward factual and legal issues and settled at a very early stage, exceeded the levels for which reimbursement is permitted under the "reasonableness" standard applied in this circuit.  Counsel's billing rates also must be reduced slightly to conform with prevailing market rates for this type of work.

## I.  **Applicable legal standard**

The Fees Act provides that in civil rights cases brought under 42 U.S.C. § 1983 (as this one was), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  § 42 U.S.C. 1988(b).  "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001).  The burden is on the plaintiffs, however, to prove that the amount they have requested is reasonable.  Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

2

In calculating a reasonable amount of fees, courts generally use what is known as the "lodestar" method:  "multiplying the number of hours productively spent by a reasonable hourly rate." De Jesus Nazario v. Rodriquez, 554 F.3d 196, 207 (1st Cir. 2009). Where appropriate, the court "may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case." Id.  Likewise, the court may adjust counsel's standard hourly rate so that it conforms with "prevailing rates in the community" for comparable work, "taking into account the qualifications, experience, and specialized competence of the attorneys involved." Gay Officers Action League, 247 F.3d at 295.

Finally, after determining the "lodestar" amount, the court "has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." De Jesus Nazario, 554 F.3d at 207.  The court "ought to provide a concise but clear explanation of its calculation of the resultant fee award." Torres-Rivera, 524 F.3d at 337 (quotation omitted).

3

II.  **Background**

       Two street preachers, Mark Frost and Jayson Gardner, were
arrested in August 2008 for allegedly preaching too loudly near
the Hampton Beach boardwalk.  The arresting officers charged them
with "[m]aking loud or unreasonable noises in a public place"
that "would disturb a person of average sensibilities," in
violation of New Hampshire's disorderly conduct statute.  See
N.H. Rev. Stat. § 644:2(III)(a).  In the ensuing criminal
proceedings, Frost and Gardner were found not guilty of the
charges.  Attorney John Anthony Simmons, a solo practitioner from
Hampton with 11 years of experience, represented them before
Hampton District Court.

       In October 2009, Frost and Gardner brought this federal
civil rights action under 42 U.S.C. § 1983, challenging the
constitutionality of New Hampshire's disorderly conduct statute
both on its face and as applied to their street preaching.  Two
attorneys from the Manchester law firm of Wadleigh, Starr &
Peters (partner Dean B. Eggert, who has 24 years of litigation
experience, and associate Michael J. Tierney, who has five years
of experience) represented them here, along with Attorney
Simmons.  They also received some help from attorneys at the

4

Alliance Defense Fund ("ADF"), a Christian public-interest law firm.[1]

Simultaneous with their complaint, the plaintiffs moved for a preliminary injunction. Because the plaintiffs wanted to preach in Hampton over the coming holidays but feared being arrested again under the disorderly conduct statute, this court scheduled an expedited preliminary injunction hearing on the day before Thanksgiving. The parties initially planned to present live testimony at the hearing (and began preparing to do so), but ultimately agreed to conduct it solely "on the papers," including the transcript from the state criminal proceedings and affidavits from key witnesses.

During an in-chambers conference held just before the scheduled hearing, the parties agreed to enter into a stipulated preliminary injunction instead. The injunction essentially prohibited the town from enforcing the challenged statutory provision against the plaintiffs except at night or if they amplified their street preaching beyond a certain decibel level (and even then, only after a warning and a reasonable opportunity

---

[1]The plaintiffs have not requested any fees for the work done by ADF lawyers, nor would this court have awarded any, given the staffing concerns discussed infra.

to comply).[2]  Two associates from the Wadleigh firm conducted research as to the appropriate decibel level while the other attorneys on the case were in court.

From that point on, the parties focused on negotiating a full settlement and obtaining approval from the town's selectmen, which happened in early 2010.  The settlement provided that the stipulated preliminary injunction would be turned into a permanent injunction, that the town would pay the plaintiffs approximately $5,000 in compensatory damages, that the town would assent to the annulment of the plaintiffs' arrest records, and that the town would reimburse the plaintiffs for their reasonable attorneys' fees and costs under 42 U.S.C. § 1988.  This court approved the settlement and issued the permanent injunction as requested.[3]

The plaintiffs have now moved for an award of $61,748.50 in attorneys' fees and $852.10 in costs.  The town, not objecting to the amount of costs, argues that the fee request is unreasonably high and instead proposes a smaller award of $14,368.54.

---

[2]Document no. 19.

[3]Document no. 26.

III.  **Analysis**

      This court must determine a reasonable amount of attorneys'
fees for the work done by plaintiffs' counsel in this case.  As
explained above, the "lodestar" method requires the court to
determine (A) the number of hours productively spent by
plaintiffs' counsel, (B) the reasonable hourly rate for such
work, and then (C) to multiply those two numbers together and
consider whether to adjust the result upward or downward for
discretionary reasons.  De Jesus Nazario, 554 F.3d at 207;
Torres-Rivera, 524 F.3d at 336.

A.  *Hours spent*

      The first part of the "lodestar" method requires a
determination of the number of hours productively spent by
plaintiffs' counsel, removing any "time that was unreasonably,
unnecessarily or inefficiently devoted to the case." De Jesus
Nazario, 554 F.3d at 207.  The plaintiffs have claimed a total of
272.25 hours, 200 of which were spent by Attorney Tierney, the
associate who took primary responsibility for handling the case.
The partner who supervised his work, Attorney Eggert, spent about
30 hours.  So did Attorney Simmons, who had represented the
plaintiffs in their state criminal proceedings.  The remaining

hours were spent by the other two Wadleigh associates who helped with legal research.

"Where tag teams of attorneys are involved," our court of appeals has made clear that "fee applications should be scrutinized with especial care" and that "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Gay Officers Action League, 247 F.3d at 297-98; see also United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 43 (1st Cir. 2008). In more complex cases, using a team of attorneys can be "an eminently reasonable tactic." Gay Officers Action League, 247 F.3d at 297. But in simpler cases, it can become unnecessary and inefficient. See id. at 298 (expressing "skeptic[ism] about the use of four attorneys to litigate a single claim--particularly a claim that did not necessitate a trial").

Although the issues in this case--freedom of speech and the free exercise of religion--were of utmost importance, this was not a particularly complex case. The factual and legal disputes were easy to understand, and the case settled at a very early stage, before any discovery or formal hearings. The only major tasks performed by plaintiffs' counsel were drafting the complaint and preliminary injunction motion, preparing for the preliminary injunction hearing (which was never held), and

negotiating the settlement.  This court is skeptical--much like
the court of appeals was in <u>Gay Officers Action League</u>--about the
use of so many hands for relatively light work.  None of the
plaintiffs' attorneys seems to have been entirely superfluous,
but it is clear that the case could have been staffed more
efficiently.

One evident inefficiency is that Attorney Tierney had two
more experienced attorneys--Attorneys Eggert and Simmons--
reviewing his work.  While it is reasonable in cases of this sort
for an associate to be supervised by a more senior attorney, it
would be unreasonable to require the town to pay for two senior
attorneys where normally one would suffice.  The plaintiffs argue
that Attorney Simmons made the representation more efficient by
virtue of his familiarity with the underlying facts and the state
criminal proceedings.  But as mentioned above, the facts of this
case were not complicated.  This court is not persuaded that such
a straightforward case requires an extra attorney to focus on the
facts.  The time spent by Attorneys Eggert and Simmons is
therefore cut in half.

In addition, the time spent by the two Wadleigh associates
who helped Attorney Tierney with legal research must be reduced.
They were clearly needed for the 0.8 hours of urgent research
that they conducted while the other attorneys were in court

preparing the stipulated preliminary injunction.  And they were also needed for the 1.5 hours they spent developing an argument against the posting of bond in connection with that injunction. Otherwise, however, their involvement seems to have been more of a luxury than a necessity in a case like this.

Finally, most of the time spent by Attorney Tierney, whose 200 hours constitute the bulk of the plaintiffs' fee request, seems to have been reasonable and productive.  But because he often used "block billing," i.e., combining multiple tasks performed on a given day into a single time entry, it is difficult to tell whether he performed certain tasks in an efficient manner.  Some of his time entries seem longer than necessary for the tasks listed.  This uncertainty counts against the plaintiffs, since they have the burden of proof.  The court therefore adjusts Attorney Tierney's time to 170 hours, a reduction of about 15 percent.  See, e.g., Torres-Rivera, 524 F.3d at 340 (upholding district court's 15-percent reduction where counsel used "block billing").

**B.  *Hourly rates***

In the second part of the "lodestar" method, the court determines a reasonable hourly rate for the work done by

plaintiffs' counsel.  In making that determination, "the court may take guidance from, but is not bound by, an attorney's standard billing rate." <u>Gay Officers Action League</u>, 247 F.3d at 296.  Rather, the "court's primary concern is with the market value of counsel's services." <u>One Star Class Sloop</u>, 546 F.3d at 40.  Where appropriate, the court may adjust counsel's standard rate so that it conforms with "prevailing rates in the community" for comparable work, "taking into account the qualifications, experience, and specialized competence of the attorneys involved." <u>Gay Officers Action League</u>, 247 F.3d at 295.

The plaintiffs have requested hourly rates of $250 for Attorney Eggert, $225 for Attorney Simmons, and $195 for Attorney Tierney and the other two Wadleigh associates.  They describe those rates as being at or even below market in New Hampshire.  The town, in contrast, argues that those rates are well above market.  Instead, the town proposes lower rates of $190 for Attorney Eggert, $175 for Attorney Simmons, and $150 for the three associates, which it claims would be consistent with the rates it pays its own attorneys.[4]  <u>See</u>, <u>e.g.</u>, <u>Andrade v.</u>

---

[4]The town argues that the rates should be even lower for "non-core" work, which "consists of less demanding tasks, including letter writing and telephone conversations." <u>Brewster v. Dukakis</u>, 3 F.3d 488, 492 (1st Cir. 1993) (contrasting those "non-core" tasks with "core work," which "includes legal research, writing of legal documents, court appearances,

Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (court may "rely upon . . . the defense attorneys' rates" in determining a reasonable rate for plaintiffs' attorneys).

The latest survey of New Hampshire attorneys indicates that most attorneys over age 40 charge between $151 and $250 per hour and that most younger attorneys charge between $120 and $175. See N.H. Bar Ass'n, 2006 Statistical Supplement 11 (2006).  Over the last decade, the rates awarded to civil rights attorneys in this district have consistently fallen within that range.  See Saalfrank v. Town of Alton, 2010 DNH 041 ($190 for senior counsel); Donovan v. Whalen, 2008 DNH 088 ($200 for senior counsel); MacDonald v. Clark, No. 06-cv-245, 2008 WL 544857 (D.N.H. Feb. 26, 2008) ($200 for senior counsel, $170 and $130 for junior counsel); Paladin v. Rivas, 2007 DNH 122 ($225 for senior counsel); Holder v. Gienapp, 2007 DNH 089 ($180 for senior counsel, $145 for junior counsel); Maiden v. City of Manchester, 2004 DNH 126 ($210 and $180 for senior counsel, $160 and $120 for junior counsel); Stenson v. McLaughlin, 2002 DNH 003 ($225 for

---

negotiations with opposing counsel," etc).  But that core/non-core distinction rarely appears in fee decisions from this district or from the court of appeals, and this court is not confident that it reflects actual billing practices among New Hampshire attorneys.  Given the reductions that this court already made to the number of hours billed (including for "block billing" of both core and non-core tasks), a further reduction of that sort is unnecessary.

senior counsel, $150 and $145 for junior counsel); <u>DesFosses v. Shumway</u>, 2000 DNH 253 ($210 for senior counsel, $130 for junior counsel).[5]

The plaintiffs, of course, favor the high end of the range, whereas the town favors the low end.  But this is not the type of case that cries out for special treatment, either high or low.  It is an ordinary civil rights matter that most litigation

---

[5]The range has been somewhat broader in cases involving other areas of the law.  <u>See</u> <u>Medline Indus., Inc. v. 9121-3140 Quebec, Inc.</u>, 2010 DNH 040 (intellectual property; $190 for senior counsel); <u>Archer v. Methot</u>, 2009 DNH 104 (intellectual property; $250 for senior counsel); <u>Carter v. Toumpas</u>, 2009 DNH 040 (class-action; $300 for senior counsel and $225 for junior counsel); <u>Tsiatsios v. Anheuser-Busch, Inc.</u>, 2008 DNH 117 (employment; $225 for senior counsel and $175 for junior counsel); <u>United Student Aid Funds, Inc. v. Prodanis, Inc.</u>, 2008 DNH 108 (employment; $185 for senior counsel); <u>Marin v. Keisler</u>, 2007 DNH 124 (employment; $350 for senior counsel, $210 for junior counsel); <u>Access Group, Inc. v. Federico</u>, 2006 DNH 131 (commercial law; $180 for senior counsel); <u>Enterasys Networks, Inc. v. DNPG, LLC</u>, No. 04-cv-209, 2006 WL 1644598 (D.N.H. June 12, 2006) (commercial law; $340 and $290 for senior counsel, $200 for junior counsel); <u>Lisitano Produce v. Cote</u>, No. 05-cv-297, 2005 WL 4114100 (D.N.H. June 10, 2006) (agriculture; $185 for senior counsel); <u>Bryan M. v. Litchfield Sch. Dist.</u>, 2005 DNH 162 (disability; $225 for senior counsel, $200 and $160 for junior counsel); <u>T-Peg, Inc. v. Vt. Timber Works, Inc.</u>, 2005 DNH 152 (intellectual property; $200 for senior counsel); <u>Hawkins v. Comm'r, N.H. Dep't of Health & Human Servs.</u>, 2005 DNH 085 (class action; $270, $250, and $225 for senior counsel, $175 for junior counsel); <u>Mr. & Mrs. S. v. Timberlane Reg'l Sch. Dist.</u>, 2004 DNH 046 (disability; $200 for senior counsel, $150 and $145 for junior counsel); <u>Cohen v. Brown Univ.</u>, 2003 DNH 112 (discrimination; $305 and $250 for senior counsel, $210 and $175 for junior counsel); <u>Silva v. Nat'l Telewire Corp.</u>, 2001 DNH 218 (class action; $300 for non-local specialist; $150 for senior counsel).

attorneys in New Hampshire would have been capable of handling. Accordingly, this court sets the hourly rates for plaintiffs' counsel toward the center of the range:  $210 for Attorney Eggert, who has 24 years of experience; $190 for Attorney Simmons, who has 11 years of experience; and $160 for Attorney Tierney and the other Wadleigh associates.

**C.    *Discretionary adjustment***

In the final step of this process, the court multiplies the hours productively spent by the reasonable hourly rate to arrive at the "lodestar" amount and then, if appropriate, "adjust[s] the lodestar itself upwards or downwards" for discretionary reasons. DeJesus Nazario, 554 F.3d at 207.  Using the hours and rates determined above, the "lodestar" amount equals $34,005.00, as shown in the following table:

| ATTORNEY | HOURS | RATE | TOTAL FEE |
|----------|-------|------|-----------|
| Eggert | 16.9 | $210 | $3,549.00 |
| Simmons | 15.2 | $190 | $2,888.00 |
| Tierney | 170.0 | $160 | $27,200.00 |
| Other Assocs. | 2.3 | $160 | $368.00 |
| **TOTAL** | **204.4** | | **$34,005.00** |

14

The plaintiffs have requested that this court add $4,000 to the "lodestar" amount to reimburse them for their time spent litigating the fee issue itself.  See, e.g., Torres-Rivera, 524 F.3d at 340 (stating that a prevailing party "normally is entitled to attorneys' fees incurred in the pursuit of fees"). But the "lodestar" already reflects time that the plaintiffs' counsel spent on the fee issue before filing their motion for fees.  This court declines to award even more fees for the plaintiffs' unnecessarily long reply.  Cf. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (noting that the "request for attorney's fees should not result in a second major litigation").  Such an award would be excessive, particularly since the town agreed that the plaintiffs were entitled to reasonable fees and challenged only the amount of such fees.

The town, in turn, requests that this court reduce the fee award because (in the town's view) the plaintiffs achieved only partial success.  But the settlement gave the plaintiffs most of what they demanded in their complaint:  a permanent injunction restricting the town's ability to arrest them for preaching too loudly, compensatory damages, attorneys' fees and costs.  The town argues that the plaintiffs failed to obtain any relief in connection with their facial challenge (as opposed to their as-applied challenge).  It is well established, however, that a

civil rights plaintiff "is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a 'common core of facts' or 'related legal theories.'"  <u>Diaz-Rivera v. Rivera-Rodriquez</u>, 377 F.3d 119, 126-27 (1st Cir. 2004) (quoting <u>Hensley</u>, 461 U.S at 435).  Here, the plaintiffs' facial and as-applied challenges were closely related, both legally and factually.  They cannot be severed for purposes of calculating the fee award.

In sum, this court sees no reason to adjust the "lodestar" amount upward or downward based on the results that the plaintiff obtained or any other discretionary factor.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the plaintiffs' motion for approval of costs and attorneys' fees[6] is GRANTED in part.  The defendant Town of Hampton shall forthwith remit $34,005.00 in attorneys' fees and $852.10 in costs to the plaintiffs, via their counsel.  The clerk shall enter judgment accordingly and close the case.

---

[6]Document no. 27.

16

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    April 23, 2010

cc:  John Anthony Simmons, Sr., Esq.
     Michael J. Tierney, Esq.
     Dean B. Eggert, Esq.
     Daniel J. Mullen, Esq.
     Andrew B. Livernois, Esq.
     Elizabeth C. Woodcock, Esq.